---

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUALITYBUILT.COM, INC., <br>                   Plaintiff, <br> vs. <br> COAST TO COAST ENGINEERING SERVICES, INC. dba CRITERIUM ENGINEERS; and DOES 1 through 20, inclusive, <br>                   Defendant. | CASE NO. 07cv627 WGH(AJB) <br> **ORDER** <br> (Doc. # 2) |

The matter before the Court is the "Ex Parte Application for Modification and/or Clarification of April 5, 2007 Temporary Restraining Order" ("Application for Modification") (Doc. # 2) filed by Defendant Coast to Coast Engineering Services, Inc., d/b/a Criterium Engineers ("Defendant" or "Criterium").

**I.    Background**

On April 3, 2007, Plaintiff QualityBuilt.com, Inc. ("Plaintiff" or "QualityBuilt") filed a Complaint and Request for Ex Parte Application for a Temporary Restraining Order and an Order to Show Cause Why a Preliminary Injunction Should Not Issue ("Application for TRO") against Criterium in the Superior Court of the State of California, County of San Diego ("state

court"). In the Complaint and Application for TRO, QualityBuilt alleges that it provided Criterium with its proprietary information, including its "systems," "methods," software and customer list (Luhr Decl. ¶ 14), in conjunction with a "Master Services and Licensing Agreement" (the "Contract"). Sometime in 2006, a dispute arose over money Criterium claimed it was owed by QualityBuilt for engineering services performed on construction projects pursuant to the Contract. (Tinsman Decl. ¶ 10.) In early 2007, Criterium sent letters and other communications to QualityBuilt clients stating that, as QualityBuilt's subcontractor, a portion of the client's outstanding invoices to QualityBuilt is due to Criterium. (Kirkland Decl., Ex. A.) For example, one such letter states, in part: "Because [Criterium] values the relationship we have had with you in the past and hope to maintain a positive relationship with you in the future, we are very eager to avoid any necessary legal entanglements, such as lien filings. We are therefore respectfully requesting that you pay the [Criterium] share of each [QualityBuilt] invoice directly to [Criterium] and then pay the balance of the invoice to [QualityBuilt] for their share." (Kirkland Decl., Ex. A.) QualityBuilt alleges that these collection letters, which threaten to file mechanics' liens, are part of "a campaign to contact QualityBuilt's clients to solicit business" and "disparage QualityBuilt's reputation and integrity." (Compl. ¶ 23.) QualityBuilt brings claims for misappropriation of trade secrets and unfair competition, seeking economic damages, punitive damages and injunctive relief. (Compl. ¶¶ 17-35.)

On April 5, 2007, the state court issued a Temporary Restraining Order ("TRO"). On April 6, 2007, Defendant removed the action to this Court, alleging diversity jurisdiction.[1] On April 9, 2007, Defendant filed its Application for Modification, requesting for an order modifying the TRO to allow Defendant to continue performing work for non-party Kitchell Contractors.

The TRO issued by the state court provides:

> Based upon the Complaint, the Memorandum in Support of the ex parte application for a Temporary Restraining Order and an Order to Show Cause why a preliminary injunction should not issue, and the declarations filed in this

---

[1] Diversity jurisdiction was properly alleged, and has not been disputed.

> matter, and good cause appearing therefore,
> Defendants are hereby ordered to show cause at 9:00 a.m. on April 16, 2007 . . . why you, your agents, servants, assigns and all those acting in concert with you, should not be further restrained and enjoined pending further order in this action from disclosing or otherwise utilizing QualityBuilt.com's . . . proprietary, trade secret, and confidential information.
> Pending the . . . hearing . . ., Coast to Coast Engineering Services, Inc., d/b/a Criterium Engineers . . . and its agents, servants, assigns and all those acting in concert with it are restrained and enjoined from contacting the clients on list attached hereto under seal for the purpose of collecting money and are further restrained from contacting clients on the above referenced list that are "keyed" as "A" or "D" as described in the attached letter from attorney Timothy J. Bryant.
> . . . .
> The restraining order granted herein shall expire on 4-16, 2007, unless extended by stipulation or order of the Court. No bond is required for the issuance of the Temporary Restraining Order.

(Notice of Removal, Ex. A.) According to the representations of Criterium, the list attached to the TRO contains a list of approximately 1,600 businesses.[2] (Application for Modification at 7.) According to Criterium:

> [T]his list is broken up into five categories designated as A, B, C, D, and E. The TRO states that Criterium Engineers may not contact clients in categories "A" or "D" which are described as follows: A-"Clients that [Criterium Engineers] worked with during the term of the [Contract]"; and D-"Clients that [Criterium] has contacted regarding the collection of monies owed to [Criterium]." . . . The TRO does not enjoin Criterium Engineers from contacting clients in class "C" which are clients with which it is currently working. However, a few of those clients, specifically Kitchell Contractors, fall into classes "A" and "D." . . . If the TRO is read literally, then Criterium Engineers is enjoined from contacting the clients it is currently working with who have also been QualityBuilt clients, such as Kitchell Engineers.
> Currently Criterium Engineers has twelve commercial projects underway with Kitchell Contractors in Arizona. . . . Each of these is a commercial construction (as opposed to residential) project. . . . Criterium Engineers was not doing work on any of these commercial projects pursuant to the Contract with QualityBuilt; rather Criterium Engineers was only doing residential inspections for a few Kitchell projects pursuant to the Contract with QualityBuilt.

(Application for Modification at 7 (citing Tinsman Decl. ¶ 17).)[3] Criterium further asserts:

> The effect of the TRO has meant that the engineering and field technician staff

---

[2] As of the date of this Order, this list has not been submitted to this Court.

[3] According to Criterium's Director, "[w]hile providing residential services for a Kitchell Contractors' project, Criterium Engineers was asked if it could provide engineering services for some Kitchell commercial projects. . . . Criterium Engineers is not using any of the methods, software or hardware of QualityBuilt in performing the work for Kitchell Contractors. . . . The QualityBuilt system does not apply to these projects." (Tinsman Decl. ¶¶ 14, 16.)

- 3 -    07cv627

> performing the consulting services and inspections for Kitchell Contractors have had to walk off of on-going projects without explanation. Since Criterium Engineers is under contract to perform these services, the Professional Engineering licenses of its CEO, Alan Mooney, and other engineering principals in the company are at risk for violating state law as it relates to the performing of engineering services since Criterium Engineers is being restrained from fulfilling its contractual obligations to Kitchell Contractors.

(Application for Modification at 8 (citing Tinsman Decl. ¶¶ 1, 20-21).) Criterium also claims that if Kichell Contractors is required to hire a new engineering company, there would be an "an inevitable cascading effect of delays for Kitchell Contractors and every subcontractor related to these projects." (Application for Modification at 8 (citing Tinsman Decl. ¶¶ 22-23).)

On April 10, 2007, QualityBuilt filed its opposition to the Application for Modification, arguing that Criterium's work for Kitchell Contractors violates the Contract. (Opp'n Application for Modification at 3-5.)

**II.     Discussion**

The TRO issued by the state court remains in effect even after removal to this Court. *See* 28 U.S.C. § 1450 ("All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."). However, a federal court has the authority to dissolve or modify injunctions and orders entered in state court prior to removal. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 437 (1974).

When the nonmovant has received notice, as here, the standard for issuing a temporary restraining order is the same as the standard for issuing a preliminary injunction. *See Brown Jordan Int'l, Inc. v. Mind's Eye Interiors, Inc.*, 236 F. Supp. 2d 1152, 1154 (D. Haw. 2002); *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (quotation omitted). The Ninth Circuit has described two sets of criteria for preliminary injunctive relief. *See Save Our*

1 *Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005).[4] However, "[u]nder any formulation of the test, the moving party must demonstrate a significant threat of irreparable injury." *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987) (citation omitted). If the moving party fails to meet this "minimum showing," the Court "need not decide whether [the movant] is likely to succeed on the merits." *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985). "[E]conomic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (citing *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980)); *see also Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended are not enough" to constitute irreparable injury) (quotation omitted).

QualityBuilt has failed to show, or even to argue, that QualityBuilt would suffer irreparable injury if the TRO was modified to allow Criterium to continue providing services to Kitchell Contractors. Even if QualityBuilt is correct that Criterium's work for Kitchell constitutes a breach of the Contract, QualityBuilt has not shown that its injury could not be remedied by a damage award. Conversely, Criterium has shown that Kitchell and Kitchell's subcontractors--nonparties to this action--would be harmed by continuing to enjoin Criterium from providing services to Kitchell. Therefore, the TRO will be modified to allow Criterium to provide services to Kitchell.

---

[4] "Under the 'traditional' criteria, a plaintiff must show '(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases).' . . . Alternatively, a court may grant the injunction if the plaintiff 'demonstrates *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor.'" *Save Our Sonoran*, 408 F.3d at 1120 (quoting *Johnson v. Cal. State Bd. of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995)). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate tests but rather outer reaches of a single continuum." *Baby Tam & Co. v. City of Las Vegas*, 154 F.3d 1097, 1100 (9th Cir. 1998) (internal quotation marks and citations omitted).

**III.  Conclusion**

For the reasons discussed above, the Application for Modification (Doc. # 2) is **GRANTED**.  The TRO issued by the state court in this action is hereby modified as follows:

- Kitchell Contractors is no longer "keyed" as "A" or "D" on the list attached to the TRO.
- The TRO shall expire on April 17, 2007, unless extended by stipulation or by order of the Court.
- Plaintiff shall submit to this Court under seal a complete copy of the TRO issued by the state court, including all attachments, no later than April 13, 2007 at 5:00 p.m.
- On April 17, 2007 at 1:00 p.m. in courtroom 4, the Court will conduct a hearing on whether to extend the TRO.
- No later than April 13, 2007 at 5:00 p.m., Plaintiff may file any supplemental materials in support of extending the TRO.
- No later than April 14, 2007 at 5:00 p.m., Defendant may file any opposition to extending the TRO.

DATED:  April 11, 2007

                                                **WILLIAM Q. HAYES**
                                                United States District Judge